## Onyshochenko Estate

*Lee Mandell,* for accountant.

*Marvin I. Block,* Special Assistant Attorney General, for Commonwealth.

KLEIN, A.J., November 22, 1972.—Daniel Onyshochenko, also known as Daniel Onitschenko, died on September 12, 1968, intestate, unmarried and without issue, leaving to survive him, according to the statement of proposed distribution and the report of the administrator annexed hereto, no known heirs.

Letters of administration were granted on November 1, 1968, and proof of advertisement of the grant thereof was produced to the auditing judge.

Mr. Block claimed the balance of principal and interest in behalf of the Commonwealth in the alternative either as statutory heir under section 2103 (6) of the Probate, Estates and Fiduciaries Code of June 30, 1972, No. 164, effective July 1, 1972, 20 PS §§101, et seq., or for payment into the State Treasury, without escheat, under section 1314 of The Fiscal Code of April 9, 1929, P.L. 343, 72 PS §1314.

Prior to the enactment of Act No. 74, Disposition of Abandoned and Unclaimed Property Act of August 9, 1971, P. L. 286, 27 PS §1-1, et seq., approved by Governor Milton Shapp on August 9, 1971, effective January 1, 1972, the Commonwealth at its option could follow any one of three methods to acquire unclaimed or escheated property: (1) it could proceed under the provisions of the Act of May 2, 1889, P. L. 66, 27 PS §§1, et seq., to escheat the funds and obtain title thereto; (2) it could make claim, pursuant to section 1314 of The Fiscal Code of 1929, for custody

and possession, but not title, to the property; and (3) it could claim as statutory heir. See Rhodes and Hannebauer Estates, 71 D. & C. 330 (1950).

The Commonwealth has not instituted escheat proceedings under the Act of 1889; hence, we can disregard this alternative in the present case.

Section 2103 of the Probate, Estates and Fiduciaries Code provides that the share of the estate, if any, to which the surviving spouse is not entitled, and the entire estate if there is no surviving spouse, shall descend in the following order: (1) issue; (2) parents; (3) brothers, sisters or their issue; (4) grandparents; (5) uncles, aunts and their children and grandchildren; and (6) in default of all persons hereinbefore described, then to the Commonwealth of Pennsylvania. The effect of this provision is to make the Commonwealth the statutory heir in default of the designated next of kin.

The courts are extremely zealous in their efforts to protect the rights of a decedent's blood relatives and will not award a fund to the State as statutory heir unless it is fully satisfied that there are, in fact, no surviving next of kin. This caution is necessary because under this procedure title to funds awarded to the Commonwealth as statutory heir vests in the Commonwealth and forecloses the rights of possible relatives.

To safeguard surviving heirs, we have adopted a rule of court which places upon the fiduciary the burden of making a full and complete investigation to locate decedent's next of kin. The rule reads, in pertinent part, as follows:

"Rule *69.5. *Contents of Report.*

"The report . . . shall be submitted at the audit, and shall include, substantially, the following:

"(a) *Unknown Distributee.* If it appears that the

identity or whereabouts of a distributee is unknown, or there are no known heirs, the fiduciary shall submit a written report at the audit, verified by affidavit of the fiduciary or his counsel, in which shall be set forth

"(1) The nature of the investigation made to locate the heirs of the decedent, in complete detail; and

"(2) in cases of intestacy, or where there are no known heirs, a family tree, as complete as possible under the circumstances, supported by such documentary evidence as the fiduciary has been able to obtain.

"The term 'investigation,' as used in this rule, shall include inquiry of or as to as many of the following as may be pertinent and feasible: residents of the household in which the decedent resided; friends and neighbors; labor union membership; places of employment; social, fraternal, or beneficial organizations; insurance records; church membership; school records; social security, Veterans' Administration, or military service records; naturalization records, if not native born; and such other sources of information as the circumstances may suggest."

The administrator in the instant case has a balance of principal of $874.16 in his possession. If he embarked upon the extensive investigation required by our rule, the entire fund would soon be exhausted by costs and expenses. This, of course, would be most impractical. Instead, the administrator has filed a report which is sketchy in nature. He states in his report:

"(3) That he did attempt to locate any living heirs through interviews with friends and neighbors of the decedent and analysis of social security records. However, he failed to locate any living heirs or descendants of decedent's heirs."

We cannot make a finding on such an inadequate

investigation that this decedent died without leaving any surviving heirs designated in the code capable of inheriting his estate. Under these circumstances, we refuse to designate the Commonwealth of Pennsylvania as statutory heir of this decedent.

As we have noted, the Commonwealth had for many years a third alternative to reach unclaimed funds such as those with which we are here concerned, i.e., pursuant to section 1314 of The Fiscal Code of 1929. Article XIII of The Fiscal Code, including section 1314, was repealed by section 30(a)(5) of Act No. 74, supra. Mr. Block, however, suggests that the Commonwealth may still make such a claim on the theory that section 30(c) of Act No. 74 is a saving clause which permits the application of section 1314 of The Fiscal Code in this case because decedent died before the effective date of the act. We disagree.

Section 30(c) of the Disposition of Abandoned and Unclaimed Property Act, supra, provides:

"(c) All existing causes of action and defenses, including but not limited to, the fifteen-year statute of repose, set forth in the act of July 10, 1963 (P.L. 233), entitled 'An act providing for repose in actions to escheat or compel payment without escheat,' . . . shall be preserved."

We find nothing in this language to justify including in the designation "existing causes of action" the Commonwealth's request for custody of funds while an estate is in the process of routine administration by a personal representative. In our view, the legislature did not so intend, because the entire thrust of the statute is to reach funds which are abandoned and unclaimed for a period of at least seven years.

Act No. 74 was an effort by the legislature to incorporate into a single statute the more than 40 different laws dealing with unclaimed property. This effort

spanned a period of some 12 years beginning in 1959 when the Pennsylvania House Judiciary Committee considered House Bill 1417 which had as its stated purpose "to consolidate, amend and revise the escheat laws of the Commonwealth." Thereafter, the problem was referred to the Joint State Government Commission for study. In 1969 the work of the commission culminated in Senate Bill 1107 of the 1967 Session, which became Act No. 74 on August 9, 1971.

A learned discussion of Senate Bill 1107, which was written before it was approved by the legislature, will be found in Revision of Pennsylvania Escheat Laws by Robert B. Ely, 3rd, in 74 Dickinson Law Review 179. Mr. Ely was a member of the Advisory Committee of the Pennsylvania Joint State Government Commission Escheat Laws Task Force. His conclusions on page 192 are noteworthy:

"It appears that the Disposition of Abandoned and Unclaimed Property Act, Senate Bill 1107, has been well and deliberately considered. The general format and particular phraseology of the Bill adopt the best of nationwide traits while preserving worthwhile Pennsylvania peculiarities. The specific provisions are both complete and fair. They represent reasonable compromises among the interests of holders, owners and the Commonwealth. The Bill eliminates multiplicity, ambiguity and other detrimental features of present statutes."

It has been suggested that the repeal of Article XIII of The Fiscal Code may have been an oversight by the legislature because we are now left without a procedure to award funds in the possession of a fiduciary to the Commonwealth as custodian when the whereabouts or identity of the rightful owner are unknown. We doubt that this was the case. It is more likely, in our opinion, that the legislature opted for a uniform

procedure covering all types of unclaimed and abandoned property and intentionally did not provide a separate kind of disposition for funds in the hands of a fiduciary. We agree completely with Mr. Ely's evaluation, supra, that the provisions of Act No. 74 "represent reasonable compromises among the interests of holders, owners and the Commonwealth."

The only alternatives which appear to be left to the court are (1) to award the fund back to the administrator, or (2) to direct that it be delivered to the clerk of the court. We choose the latter course, because we think it would be unfair to the administrator to add to the burdens he has already encountered in administering this very small estate. Accordingly, the balance of principal shown in the account, in the amount of $874.16, together with any income to time of actual distribution, is awarded to the clerk of the court.

Leave is granted to the accountant to make all transfers necessary to effect distribution in accordance with this adjudication.

And now, November 22, 1972, the account is confirmed nisi.

### SUPPLEMENTAL ADJUDICATION

KLEIN, A. J., December 6, 1973.—By adjudication dated November 22, 1972, the request of the Commonwealth of Pennsylvania to award the balance of principal, shown in the account, in the amount of $874.16, together with any income to time of actual distribution, either as statutory heir under section 2103 of the Probate, Estates and Fiduciaries Code or, in the alternative, under section 1314 of The Fiscal Code of 1929, was refused and the fund was awarded to the clerk of the court.

Exceptions were filed by the Commonwealth which were dismissed pro forma by decree dated June 21,

1973, and the matter was referred back to the auditing judge at his request for further consideration.

With the consent of the Commonwealth, the award made in the adjudication is amended as follows: The balance of principal in the account, in the amount of $874.16, together with any income to the time of actual distribution, is awarded to the Clerk of the Orphans' Court Division, without prejudice to the rights of the Commonwealth of Pennsylvania or any other party in interest to make claim for such fund at any time in the future.

In all other respects, the original adjudication is confirmed.

And now, December 6, 1973, the account is reconfirmed nisi.